R. H. OSWALD COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25100.    Filed February 10, 1956.

*Walter E. Barton, Esq.*, for the petitioner.
*Lyman G. Friedman, Esq.*, for the respondent.

## OPINION.

MURDOCK, *Judge*: The petitioner contends that its actual average base period net income is an inadequate standard of normal earnings

for the purpose of computing its excess profits taxes for the taxable years because its business was depressed in the base period by two temporary economic circumstances unusual in its case, within the meaning of section 722 (b) of the Internal Revenue Code of 1939. One circumstance was the invasion of its market by various unemployed persons who brought fresh fruits and vegetables into the area by truck, and the other was the free distribution of fresh fruits and vegetables by the Federal Government in the trade area served by the petitioner. It argues that the market was glutted on occasions, prices were brought down, and its sales were reduced, by the truckers and the free distributions.

The truckers began to offer some competition to the petitioner prior to the base period years. It had not encountered similar competition theretofore. Some of that competition was temporary. The temporary competition from that source may have adversely affected the business of the petitioner during a part of the base period to a degree not shown by the record. Likewise the spasmodic free distribution of fresh fruits and vegetables during the base period may have had an adverse effect upon the business of the petitioner during the base period. The business of the petitioner was affected adversely and permanently by competition from chain stores which conducted supermarkets. The claim for relief is not based upon that latter competition.

Nevertheless, it is not at all clear that the business of the taxpayer was "depressed" in the base period by any of these circumstances. Reference is made here to the table in the findings of fact setting forth net sales, cost of goods sold, gross profit on sales, operating expense, and net income or loss, for the fiscal years 1923 through 1940. The average of net sales for the base period was larger than the average for the 5 preceding years and also better than the average for the entire period shown, although for the years 1926 through 1931 the sales had been, generally, larger. The cost of goods sold for the base period about equaled the average for the whole period. The gross profit on sales for the base period was much larger than the average for the whole period and compared favorably with the average for any other 4 consecutive years in the history of the company. These figures effectively refute the petitioner's contention that its business was depressed during the base period through a reduction in the volume of or gross profit on its sales due to the free distributions and the temporary competition from truckers.

The average net income for the base period was low compared to the average for the whole period. However, losses exceeded gains for the 5 years preceding the base period, and the average net income for the 6 years preceding the base period was less than the average in the base period. The reason for the low average net income in the base

period is obvious when the column showing operating expense is examined. The operating expense for each of the base period years was substantially higher than the operating expense for any other year in the prior history of the petitioner. The average operating expense for the base period years exceeded the average for the whole period by over $30,000 per year. It is thus apparent that the low net earnings of the base period years were not due to depressed sales or depressed gross profits on sales, as contended by the petitioner, but were due to increased operating expenses. The petitioner makes no claim for relief based upon increased operating expenses. Nor does it claim that the free distributions and trucker competition were responsible for the high operating expenses of the base period. Its claim that free distributions and temporary trucker competition depressed its business during the base period is, thus, not supported by the evidence.

Furthermore, the record as a whole does not justify a finding that the earnings of the base period would have been substantially greater had there been no free distributions and no temporary competition from truckers. The president of the petitioner expressed an opinion on this point, favorable to the petitioner's case, and another wholesaler gave some testimony on the subject, but both were speaking in general terms and neither attempted to support his statements by specific instances, by demonstration of any kind, or by reference to any applicable figures. The record does not show, even approximately, how often distributions were made or the amounts distributed in the territory. Those distributions were limited to persons on relief and the extent to which such recipients would otherwise have been the ultimate purchasers of competing merchandise of the petitioner has not been shown. Likewise, the testimony in regard to the competition of the temporary truckers was in general terms. The Court is not able to find as a fact from the record as a whole that the earnings of the petitioner for any base period year would have been greater by a dollar amount, or even by any minimum amount, had there been no free distributions and had there been no temporary competition from truckers during the base period.

The average annual net income of the petitioner for the base period was $2,790. The Commissioner in his determination of the excess profits tax liability of the petitioner for the taxable years without the application of section 722, has used a credit based upon invested capital, which credit amounted to $7,573.93 for 1942 and $7,459.76 for 1943. No relief would result unless a constructive average base period net income in excess of those amounts were determined. Certainly the record does not justify a finding that the average earnings of the base period years, in the absence of the free distributions and temporary competition from truckers, would have been sufficient to give an excess profits credit, based on income, in excess of the credit al-

lowed, based upon invested capital. Thus it is apparent that the petitioner is not entitled to any relief under section 722, even assuming that the free distributions and the temporary competition of the truckers were temporary economic circumstances unusual in the case of the petitioner within the meaning of section 722 (b) (2).

One of the arguments made by the Commissioner in opposition to the claim based upon the free distribution of fresh fruits and vegetables by the Federal Government is that qualification for relief under section 722 (b) (2) can never be based upon the enactment of and the administration under a Federal statute, even though economic circumstances may flow therefrom. He relies upon *Acme Breweries*, 14 T. C. 1034, 1052; *Packer Publishing Co.*, 17 T. C. 822; and *Norfolk & Chesapeake Coal Co.*, 18 T. C. 904. The point thus argued by the Commissioner will not be decided in this case in which it is apparent for other reasons that the petitioner is not entitled to relief in any event.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*

Turner, *J.*, dissenting: I am unable to agree that the record fails to show that the business of the taxpayer was depressed during the base period by the circumstances claimed by petitioner, namely, the competition of the so-called itinerant truckers and the free distributions of surplus commodities by the Federal Government. I do agree that by and during the base period the trucker competition was on the wane and that the effects of such competition alone would not justify any relief. The full impact of the distribution of surplus commodities, however, was felt during the base period, and it is my view that petitioner is entitled to some relief, even though not substantial, if such distribution of surplus commodities was a qualifying factor under the statute. It is thus necessary, in my opinion, to decide whether our prior decisions in *Acme Breweries*, 14 T. C. 1034, *Packer Publishing Co.*, 17 T. C. 882, and *Norfolk & Chesapeake Coal Co.*, 18 T. C. 904, are controlling.

As being indicative that the depression, if any, of petitioner's base period income was not due to the two factors as claimed, the majority opinion stresses the increase in petitioner's operating expenses for the base period over its operating expenses for the prior periods relied upon by petitioner as normal. It is, of course, a shown fact that as the years passed petitioner's operating expenses had increased and that absent such increase, its average base period net income would have been higher. Granted that such was the case, that does not mean that petitioner's average base period net income was not depressed by the circumstances relied upon. Those circumstances depressed

sales, and certainly it does not follow that in making added sales petitioner's operating expenses would have increased materially, or even ratably. And, if not, it would follow that with the rise in sales, absent the depressing factors, there would have been a corresponding increase in net income. See and compare *Morrow-Thomas Hardware Co.*, 22 T. C. 781.